# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JEFFREY ORENSTEIN,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:23-CV-00391-JRN** |
| | § | |
| **SPRUCE SERVICES, INC.** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE JAMES R. NOWLIN**
   **SENIOR UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Spruce's Motion to Dismiss or Transfer to the Southern District of Florida, filed July 7, 2023 (Dkt. 11), and the associated response and reply briefs. On November 21, 2023, the District Court referred the motion and related filings to this Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 16.

## I.    Background

Jeffrey Orenstein brings this putative class action, individually and on behalf of all others similarly situated, against Spruce Services, Inc. ("Spruce") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c)(2), which prohibit telemarketing calls and texts to residential telephone subscribers on the National Do-Not-Call Registry ("NDNCR").[1]

---

[1] The NDNCR is a list maintained by the Federal Trade Commission since December 18, 2002 to protect consumers from unsolicited telemarketing calls. *Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14023 (2003).

### A. Parties and Allegations

Orenstein, a Florida citizen who lives in an apartment property in Boca Rotan, Florida, alleges that his cellular telephone number has been on the NDNCR since December 2004. Amended Complaint, Dkt. 8 ¶ 12. Defendant Spruce, a Delaware corporation with its principal place of business in Austin, Texas, "provides lessees of apartment buildings throughout the country, including many in Florida, with a service aimed at connecting residents with various vetted professionals who perform cleaning and other home maintenance services." Declaration of Benjamin Johnson, Dkt. 11-2 ¶ 6.

Orenstein filed this action on April 5, 2023, alleging that Spruce sent unsolicited automated "telemarketing and solicitation text messages" to his cellular telephone between November 2022 and January 2023. Dkt. 8 ¶ 18. Orenstein also alleges that Spruce "delivered identical—or materially identical—text messages to all residents in Plaintiff's apartment building, as well as numerous other apartment buildings across the country." *Id.* ¶ 19. In his original complaint, Orenstein asserted both a TCPA claim[2] and a claim under the Florida Telephone Solicitation Act ("FTSA"), FLA. STAT. § 501.059(8)(a).[3] Dkt. 1 ¶¶ 60-80. On June 12, 2023, Orenstein amended his complaint to remove the state FTSA claim.[4] Dkt. 8.

---

[2] 47 U.S.C. § 227(c)(5) allows a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. 47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitation calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

[3] This statute prohibits automated unsolicited telephonic sales calls "without the prior express written consent of the called party." FLA. STAT. § 501.059(8)(a).

[4] Shortly after Orenstein filed his original complaint, on May 25, 2023, the Florida Legislature amended the FTSA to prohibit plaintiffs from filing claims for damages unless they first instruct the telemarketer to "STOP" delivering telemarketing messages and the telemarketer refuses to heed that request after 15 days of receiving such notice. FLA. STAT. § 501.059(10)(c). Orenstein alleges that he dropped the FTSA claim because the amendments were applied retroactively to all pending class actions that had yet to be certified. Dkt. 12 at 4.

Along with statutory damages under the TCPA and attorneys' fees, Orenstein seeks to represent a class of "[a]ll persons throughout the United States" who had their residential telephone number on the NDNCR and received telemarketing text messages from Spruce in the past four years. *Id.* ¶ 30.

### B. *Garcia* Action

On January 30, 2022—about two months before Orenstein filed this case—Florida residents Camila Garcia and Nathalia Aguilar ("*Garcia* Plaintiffs") filed a different class action against Spruce in Florida state court under the FTSA. *Garcia v. Spruce Servs., Inc.*, No. 2023-001529-CA-01 (Fla. Cir. Ct. Jan. 30, 2023) (Dkt. 1-2 in 1:23-CV-20881-CMA) ("*Garcia* Action"). The *Garcia* Plaintiffs allege that Spruce violated Section 501.059(8)(a) of the FTSA by sending automated telemarketing text messages to their cell phones beginning on July 1, 2021. The *Garcia* Action does not assert a claim under the TCPA.

On March 6, 2023, Spruce removed the *Garcia* Action to the United States District Court for the Southern District of Florida, Miami Division, under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). *Garcia v. Spruce Servs., Inc.* 1:23-CV-20881-CMA (S.D. Fla. March 6, 2023). On March 17, 2023, the parties filed a Joint Discovery Plan and Scheduling Report suggesting that "a stay may be appropriate" because (1) Spruce "intends to file a motion to compel arbitration on or before March 27, 2023," arguing that plaintiffs "are subject to binding arbitration on an individual basis" based on arbitration clauses in plaintiffs' lease agreements, *id.* at Dkt. 12 at 1; (2) "Plaintiffs intend to file a motion seeking remand to state court . . . based on improvident removal under *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019)," *id.* at 2; and (3) on March 13, 2023, the Eleventh Circuit vacated the panel decision in *Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022) ("*Drazen I*"), *reh'g en banc granted*, *opinion vacated*, 61 F.4th

1297 (11th Cir. 2023), and *on reh'g en banc*, 74 F.4th 1336 (11th Cir. 2023), to reconsider whether a single text message was a sufficient concrete injury to establish Article III standing.[5]

On March 18, 2023, the Florida District Court stayed the *Garcia* Action "pending the Eleventh Circuit's forthcoming *en banc* decision in *Drazen v. Pinto*, No. 21-10199 (11th Cir. 2023)." Dkt. 13 at 2 in 1:23-CV-20881-CMA. On July 24, 2023, the Eleventh Circuit issued its decision overruling *Drazen I* and *Salcedo* and holding that "the receipt of an unwanted text message causes a concrete injury" to confer Article III standing. *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("*Drazen II*"). On September 20, 2023, the parties jointly moved to reopen the case. Dkt. 16 in 1:23-CV-20881-CMA. On September 21, 2023, the Florida District Court denied the motion to reopen, stating that the case "will be reopened once Defendant files its anticipated motion to compel arbitration and to dismiss." *Id.* at Dkt. 17. As of this date, Spruce has not moved to compel arbitration and the case remains stayed.

### C.  Motion to Dismiss or Transfer

On July 7, 2023, Spruce filed this Motion to Dismiss or Transfer this action to the Southern District of Florida based on the first-to-file rule. In the alternative, Spruce moves to transfer to the Southern District of Florida under 28 U.S.C. § 1404(a). Dkt. 7.

---

[5] In *Salcedo*, the plaintiff brought a putative class action against a law firm, alleging violations of the TCPA after receiving a single unsolicited text message. 936 F.3d at 1165. The Eleventh Circuit held that plaintiff's receipt of a single unwanted text message was not a sufficiently concrete injury to establish Article III standing. *Id.* at 1173-74. The Fifth Circuit and numerous other circuits have expressly rejected the Eleventh Circuit's reasoning. *See, e.g., Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021). In *Drazen I*, the plaintiff brought a putative class action under the TCPA and included in the proposed class definition individuals who received only one unsolicited text message. 41 F.4th at 1356. Relying on *Salcedo,* the Eleventh Circuit held that the definition of the proposed settlement class was defective because it included class members who lacked Article III standing. *Id.* at 1363.

## II.    First-to-File Rule

Spruce argues that the Court should apply the first-to-file rule and dismiss or transfer this case to Southern District of Florida "due to its substantial overlap" with the *Garcia* Action. Dkt. 11 at 1. The Court disagrees.

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). If the court finds that the cases substantially overlap, it may choose to stay, transfer, or dismiss the duplicative later-filed action. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). "Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Cadle*, 174 F.3d at 604. The first-to-file rule is a discretionary doctrine and is reviewed for abuse of discretion. *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011).

"The rule does not require the cases to be identical. Instead, 'the crucial inquiry is one of 'substantial overlap.'" *Id.* at 678 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 n.6 (5th Cir. 1971); *see also Save Power*, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.").

In deciding whether a substantial overlap exists, the Fifth Circuit has looked at factors such as whether the core issue was the same or if much of the proof adduced likely would be identical. *Sweet Little Mexico*, 665 F.3d at 678. "Where the overlap between two suits is less than

complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* In considering these factors, courts "exercise care to avoid interference with each other's affairs as the concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* (cleaned up).

The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. *Save Power*, 121 F.3d at 948; *see also Mann Mfg.*, 439 F.2d at 408 ("Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed."). The first-to-file rule, therefore, "not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp. v. P & P Indus.*, 125 F.3d 914, 920 (5th Cir. 1997).

Spruce argues that "there is substantial overlap" between this case and the *Garcia* Action because (1) both actions "name the same defendant (Spruce) and have named plaintiffs that are Florida residents," Dkt. 11 at 2; (2) both Orenstein and the plaintiffs in the *Garcia* Action are Florida residents complaining about text messages they received in Florida; and (3) both class representatives seek to recover statutory damages.

Spruce points out the cases' similarities but does not acknowledge their differences. Most notably, the two cases assert different causes of action. Orenstein asserts only a TCPA claim, alleging that Spruce violated Section 227(c)(5) by "delivering more than one advertisement or

marketing text message to residential telephone numbers registered with the National Do-Not-Call Registry" between November 2022 and January 2023. Dkt. 8 ¶¶ 2, 13. The *Garcia* Plaintiffs, in contrast, assert a claim under Section 501.059(8)(a) of the FTSA, alleging that Spruce sent "at least one text message" to their phones "and the cellular telephones of numerous other individuals across Florida" to solicit consumer goods or services beginning July 1, 2021. Dkt. 1-1 ¶¶ 47-57 in 1:23-cv-20881-CMA. The relevant period in each case thus is different.

And the required elements of the two statutes are entirely different. To state a plausible claim under Section 227(c)(5) of the TCPA, a plaintiff must allege that "(1) a residential telephone subscriber (2) received more than one telephonic solicitation (3) by or on behalf of the same entity (4) during a twelve-month period (5) to a number that the subscriber registered on the NDNC registry." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 347 (1st Cir. 2022). To assert a plausible claim under Section 501.059(8)(a) of the FTSA, "a plaintiff must allege a person made or knowingly allowed 'a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers . . . without the prior express written consent of the called party.'" *Borges v. SmileDirectClub, LLC*, No. 21-CV-23011, 2022 WL 4269564, at *4 (S.D. Fla. Sept. 15, 2022) (quoting § 501.059(8)(a)). Thus, unlike Orenstein, the *Garcia* Plaintiffs need not show that they received more than one message, that their telephone numbers were on the NDNCR, or that their cellular numbers were personal residential telephone numbers. In addition, unlike Orenstein, in order to recover under the FTSA, the *Garcia* Plaintiffs must show that they notified Spruce they did not wish to receive text messages from Spruce by replying "STOP" to any text messages from Spruce and that Spruce refused to heed the "STOP" request after 15 days of receiving such notice. FLA. SAT. § 501.059(8)(a).

Another important difference between the two cases is that they seek to certify different classes. Orenstein seeks to represent a national class of:

> All persons throughout the United States (1) to whom Spruce Services, Inc. delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Spruce Services, Inc.'s or its business partners' goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Spruce Services, Inc. delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

Dkt. 8 ¶ 30. The *Garcia* Plaintiffs seek to represent a Florida state class of "[a]ll persons in Florida who, at any time since July 1, 2021, received a telephonic sales call made by or on behalf of Defendant using the same type of equipment used to make telephonic sales calls to Plaintiffs." *Id.* ¶ 29.

Finally, the cases are distinguishable because the *Garcia* Plaintiffs allegedly signed binding arbitration agreements requiring arbitration on an individual basis, where Spruce "does not—and cannot—advance that argument here because [Orenstein] did not sign any binding individual arbitration agreement." Dkt. 12 at 10. The *Garcia* Action may be compelled to arbitration, but the arbitration issue has not arisen here.

Based on these differences, "the core issues" in each case are not the same, and "much of the proof adduced is not likely be "identical" in both cases. *Sweet Little Mexico*, 665 F.3d at 678.[6] The Court finds that the first-to-file rule is inapplicable.

---

[6] Spruce relies on *Pawlik v. Johns L. Firm, LLC*, No. MO:22-CV-113-DC-RCG, 2022 WL 17684358, at *3 (W.D. Tex. Sept. 20, 2022), *R. &. R. adopted*, 2022 WL 17684314 (W.D. Tex. Oct. 6, 2022), which is readily distinguishable from this case. Spruce also relies on several cases from courts outside the Fifth Circuit. Not only are those cases also factually distinguishable, but this Court is bound only by Supreme Court and Fifth Circuit precedent. *Nikolova v. Univ. of Texas at Austin*, 585 F. Supp. 3d 936, 946 (W.D. Tex. 2022).

### III.   28 U.S.C. § 1404(a)

In the alternative, Spruce argues that this case should be transferred to the Southern District of Florida for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a).

Under the general venue statute, a civil action may be filed in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Orenstein chose to file this action in the Austin Division of the Western District of Texas, where Spruce resides. Venue is proper in this district under the general venue statute. "Congress, however, has tempered the effects of this general venue statute by enacting the venue transfer statute, 28 U.S.C. § 1404." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("*Volkswagen II*"). This statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of Section 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Volkswagen II*, 545 F.3d at 313.

The preliminary question for a court under § 1404(a) is whether the lawsuit "might have been brought" in the destination venue. *Id.* at 312. If the answer is yes, then the court must determine

whether the moving party has shown "good cause" for transferring the case. *Id.* at 315. A party seeking a transfer "must show good cause" by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* at 315 (quoting § 1404(a)). When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. *Id.* "When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Thus, "the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*

In determining whether a transfer is clearly for the convenience of parties and witnesses and in the interest of justice, courts look to a series of private and public factors. *Volkswagen II*, 545 F.3d at 315. The private interest factors include:

1. the relative ease of access to sources of proof;

2. the availability of compulsory process to secure the attendance of witnesses;

3. the cost of attendance for willing witnesses; and

4. all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.* The public interest factors include:

1. the administrative difficulties flowing from court congestion;

2. the local interest in having localized interests decided at home;

3. the familiarity of the forum with the law that will govern the case; and

4. the avoidance of unnecessary problems of conflict of laws in the application of foreign law.

*Id.* These factors are neither exhaustive nor exclusive, and none is dispositive. *Id.* District courts have broad discretion in deciding whether to order a transfer under § 1404(a). *Id.* at 311.

### A. Preliminary Inquiry

The preliminary inquiry under § 1404(a) is whether this case "might have been brought" in the Southern District of Florida. Orenstein does not dispute that this lawsuit could have been filed in the Southern District of Florida under the general venue statute, where Orenstein resides and where he received the allegedly unlawful text messages. 28 U.S.C. § 1391(b). Accordingly, the Court addresses whether the private and public interest factors support a transfer.

### B. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

The first private interest factor focuses on the location of "documents and physical evidence relating to the [case]." *Volkswagen II*, 545 F.3d at 316. "The question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). This factor weighs in favor of transfer where the current district lacks any evidence relating to the case. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

Although Spruce does not dispute that all of its documents are in the Western District of Texas, where it maintains its headquarters, Spruce argues that "the fact that its documents may be located here is not particularly important to the § 1404 analysis" because the documents can be exchanged electronically. Dkt. 11 at 15. "The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). That all of Spruce's documents are located here does not strongly favor transfer. *In re TikTok, Inc.*, 85 F.4th at 358.

Spruce also argues that this factor supports transfer because:

> As this case progresses—particularly to the class discovery stage—the documentation that the individual class members signed and were provided when they leased their respective apartments will be important to the class certification analysis. Amongst other things, this documentation will bear on whether the questions of whether the individual consented to receive text messages from Spruce and whether they agreed to arbitrate any disputes with Spruce. These documents are held by Spruce's clients—including the hundreds of properties throughout Florida that have added the addendum to their lease agreements.
>
> In many, if not most cases, this information will be in the possession of the particular property management company or the owner of the apartment property. For those members of the class located in Florida, Orenstein included, this information would be in Florida. With respect to the purported nationwide class, there is no reason why all of this information would be with Texas-based apartment leasing/management companies.

Dkt. 11 at 16. But the fact that some documents at issue are in the Southern District of Florida does not favor transfer. As stated, Spruce seeks to represent a national class of plaintiffs, not just a Florida class. Spruce has admitted that it has clients throughout the United States, including Texas, and all of its documentary evidence is located here. Dkt. 11-2 ¶ 6. This factor weighs against transfer.

### 2. Availability of Compulsory Process

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. District courts have the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A). Any trial subpoenas for witnesses to travel more than 100 miles would be subject to motions to quash. FED. R. CIV. P. 45(d)(3)(A)(ii).

Spruce argues that this factor favors transfer because some of the relevant witnesses (including property management companies, property managers, and other employees of apartment buildings who work for Spruce's clients in Florida) reside within 100 miles of the Southern District of Florida. But other relevant witnesses are in the Western District of Texas. Witnesses living far from either district will be equally inconvenienced. This factor is neutral.

### 3.   Costs of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen II*, 545 F.3d at 317. All potential material and relevant witnesses must be considered. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009).

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) ("*Volkswagen I*"). When applying the 100-mile rule, the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *Volkswagen II*, 545 F.3d at 317. If so, then a court determines the distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *Id.* The 100-mile rule favors transfer if the transferee venue is a shorter average distance from witnesses than the transferor venue. *Id.*

Orenstein, some potential class members, and some of Spruce's willing witnesses live within 100 miles to the Southern District of Florida. Spruce's corporate representatives and employees and Austin-based clients live within 100 miles of this District. Many other willing witnesses live throughout the United States. This factor does not favor transfer.

#### 4. All Other Practical Problems

The fourth private interest factor is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 315. Spruce has not identified any other practical problems that might arise if this case was tried in Austin. This factor also does not favor transfer.

### C. Public Interest Factors

The only public interest factor Spruce contends favors transfer is administrative difficulties arising from court congestion. Spruce argues that this factor supports transfer because the time for civil cases to go to trial in the Southern District of Florida is 22.6 months, while the time to trial in this District is 28.2 months. But as Orenstein points out, the *Garcia* Action is stayed pending resolution of the arbitration issue. It is unclear whether that would affect this case. This factor does not clearly favor transfer.

### D. Conclusion as to Motion to Transfer under § 1404(a)

Because none of the factors favor transferring this case to the Southern District of Florida, Spruce has failed to sustain its burden to show good cause for the transfer. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315.

Finally, the Court emphasizes that "[t]he underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient." *Id.* at 313. Because Orenstein filed this action in Spruce's home District, there is no such concern here. This Magistrate Judge recommends that Spruce's Motion to Transfer under § 1404(a) should be denied.

## IV.    Recommendation

The undersigned **RECOMMENDS** that the District Court **DENY** Defendant Spruce's Motion to Dismiss or Transfer to the Southern District of Florida (Dkt. 11).

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the Honorable James R. Nowlin.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 18, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE